IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrea Lynne Harchar,           Case No. 3:09 CV 436

          Appellant,           MEMORANDUM OPINION
          AND ORDER

     -vs-

          JUDGE JACK ZOUHARY

United States of America,

          Appellee.

## INTRODUCTION

This matter comes before the Court as an appeal of an adversary proceeding litigated in the bankruptcy court. In particular, Appellant Andrea Harchar seeks to reverse the bankruptcy court's summary judgment decision in favor of Appellee United States, and two earlier dismissals under Federal Civil Rule 12. The United States cross-appeals the denial of court costs. Andrea Harchar and the Government filed briefs in support of their respective appeals, Oppositions, and Replies (Doc. Nos. 24-29). The parties also submitted separate briefs addressing whether this Court has jurisdiction over this appeal (Doc. Nos. 14, 16). For the reasons below, this Court affirms the bankruptcy court in all respects.

**BACKGROUND**

*The Beginning of the Chapter 13 Case and This Adversary Proceeding*

On May 1, 1998, Appellant Andrea Harchar and her then-husband Kenneth Harchar filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.[1] Appellee United States of America ("Government") was a creditor in the case because of a pre-petition tax arrearage owed by the Harchars. In August 1998, the plan of reorganization proposed by the Harchars was confirmed by the bankruptcy court. In their plan, the Harchars proposed to pay in full priority tax claims held by the Government, and to pay five cents on the dollar over 43 months for unsecured, nonpriority claims held by the Government and similarly situated creditors.

The Harchars filed an adversary proceeding against the Government for alleged injury caused by the implementation in the main Chapter 13 bankruptcy case of the Government's practice of "freezing" computer-automated refunding of tax overpayments to Chapter 13 debtors, and instead processing refund claims manually. The Adversary Complaint also targeted the Government's initial refusal to issue a manual refund for the Harchar's 1999 return until after the bankruptcy court resolved a Government motion to modify the Chapter 13 plan to include the refund in plan-funding. The Government withdrew this motion after the Harchars amended their schedules, indicating their disposable income had shrunk since the bankruptcy petition.

---

[1] Andrea and Kenneth have separated since the filing of their bankruptcy case. Andrea now goes by the surname "Peticca." For ease of reference, this Opinion will refer to them individually as "Andrea" and "Kenneth," and collectively as "the Harchars."

*Amendments to the Adversary Complaint and the Government's First Appeal*

The Adversary Complaint was filed in June 2000, but was not served until August. The refund for tax year 1999 was issued in July 2000, and included interest for the delay. The Harchars then filed their first Amended Complaint, alleging that the freeze and the delay of the manual refund each constituted a willful violation of the automatic stay under Section 362(a) of the Bankruptcy Code, entitling them to actual damages under Section 362(h).[2] This Amended Complaint also alleged violations of due process, Section 525(a) of the Bankruptcy Code, and the plan confirmation order, and sought injunctive and declaratory relief on behalf of all Chapter 13 debtors to prevent further automatic refund freezes by the Government.

In late 2001, the Harchars were granted leave to again amend their complaint, this time to seek damages for emotional distress. The Government appealed this interlocutory ruling, and this Court (Judge Leslie Wells) reversed, agreeing with the Government that "actual damages" in Section 362(h) did not include damages for emotional distress, and that sovereign immunity was not waived as to damages for emotional distress. *U.S. v. Harchar*, 331 B.R. 720 (N.D. Ohio 2005).

On remand, the bankruptcy court granted a motion to supplement the complaint in order for the Harchars to claim additional damages attributable to the computer freeze of the Harchars' overpayments for their 2000 income tax return. This newly minted complaint alleged that an audit of Kenneth's 2000-year return reflected retaliation by Government counsel. At that point, discovery on the 1999 issues was nearly concluded, but it was reopened for the 2000-year issues.

---

[2] The amendments to the Bankruptcy Code in 2005 renumbered Section 362 to 362(k)(1). Because the Harchars filed their case before 2005, this Opinion will use the pre-amendment numbering to be consistent with the other opinions filed in this case.

### *The Government's Motion to Dismiss and the Second Appeal*

The Government moved to dismiss the action under Federal Civil Rule 12(b)(6). The motion was denied as to the stay-violation claims, and granted as to all other legal theories, including the alleged violations of due process, Section 525, and the plan confirmation order. *In re Harchar*, 2006 WL 3196846 (Bankr. N.D. Ohio 2006). The Government appealed this interlocutory order as well, seeking dismissal of the stay violation claims. This Court (Judge Patricia Gaughan) affirmed the denial of dismissal of the stay-violation claims, and sustained the refusal to consider the Government's alternative request for summary judgment. *U.S. v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007).

### *Summary Judgment*

On remand, after reassignment of the matter to Judge Richard Speer, the parties agreed to bifurcate the proceedings and first address the 1999-year issues. At this point, the Government ordered transcripts of two of the three depositions of IRS officials taken years earlier by Harchars' counsel. After ordering the transcripts, the Government asked for leave to move for summary judgment, and Harchars' counsel agreed that simultaneous cross-motions for summary judgment would be appropriate.

Judge Speer granted summary judgment to the Government, concluding that the IRS had not violated the automatic stay either in freezing computer-automated refunding of tax overpayments or in withholding a manual refund of the 1999-year tax overpayment, while the Government sought to modify the confirmed Chapter 13 plan to include the refund in plan-funding. *In re Harchar*, 393 B.R. 160 (Bankr. N.D. Ohio 2008). The bankruptcy court Order indicated Judge Speer would soon

schedule a pre-trial conference "to discuss the matter of the debtor's 2000-year tax refund" (Bankr. Doc. No. 200 at 38).[3]

### *The End of the Case Below*

Counsel for all parties then agreed in principle on a stipulation that would dismiss all remaining claims (*i.e.* the 2000-year refunds of both Andrea and Kenneth), enable an appeal from the summary judgment decision, set the amount of costs to be awarded to the Government, and stay the collection of costs pending an appeal by the Harchars. Counsel for the Harchars sought signatures from both Andrea and Kenneth, but ultimately filed the stipulation signed only by Andrea. Counsel for the Harchars reported that Kenneth failed to return phone calls or respond to letters from counsel. The stipulation was filed on October 16, 2008 and was operative only as between Andrea and the United States (Bankr. Doc. No. 205). Thereafter, counsel for the Harchars moved to withdraw as counsel for Kenneth, which the bankruptcy court granted.

The Order allowing Kenneth's counsel to withdraw, entered November 20, 2008, required Kenneth to file a response by January 5, 2009, "setting forth the measures that will be taken to further prosecute this action," without which his claims would be subject to dismissal with prejudice and without further notice or hearing. Kenneth failed to respond to this Order, and was therefore dismissed for failure to prosecute on January 14, 2009.

On February 2, 2009, the bankruptcy court *sua sponte* entered an Order containing two paragraphs, the first of which began with "[t]he record in this case shows as follows" and proceeded to recite aspects of the procedural history. The second paragraph read "[b]ased on this procedural

---

[3] "Bankr. Doc. No." refers to a docket entry found on the bankruptcy court docket for the adversary proceeding (Case. No. 07-03184-rls, formerly Case No. 00-01184), not the docket for the main Chapter 13 case.

posture, it appears that there are no forthcoming matters necessary for adjudication in this Court" (Bankr. Doc. No. 213).

On February 10, 2009, Andrea filed her notice of appeal -- within ten days of the February 2 Order, but more than ten days after the January 14 Order dismissing Kenneth. On February 11, 2009, the Government filed a motion for final judgment, suggesting that the February 2 Order was mistaken in indicating that there was nothing left to do in the case (Bankr. Doc. No. 218). The Government believed the October 16, 2008 stipulation was not self-effectuating, and so Andrea's claims relating to her 2000-year refund were still outstanding. The motion also asked that the stipulation regarding costs be implemented as a judgment.

On February 13, 2009, the bankruptcy court denied the motion for judgment (Bankr. Doc. No. 220). The court first stated that "while the stipulation is binding upon the Parties, the Court is not under any duty to approve the stipulation" (Bankr. Doc. No. 220, p. 2). The court also stated that it "continues not to be inclined to approve the agreement, particularly those terms of the stipulations regarding 'finality' which is an issue plainly within the purview of an appellate court," citing 28 U.S.C. § 158 (provision granting this Court appellate jurisdiction). The Order further stated that Andrea had filed a "timely notice of appeal" from the February 2 Order because "there did not remain any further matters for adjudication," adding that the Order "expressly took into account that the Parties had entered into a stipulation regarding the Defendant's costs and Plaintiffs' 2000 year tax refund, and that this [Bankruptcy] Court had entered a decision and Order regarding the Plaintiffs' 1999 year tax refund" (Bankr. Doc. No. 220, p. 3). The bankruptcy court concluded that Andrea's February 10 appeal had deprived it of jurisdiction over the Government's February 11 motion for a final judgment because, although it would have jurisdiction over a valid motion to alter or amend a

6

judgment (under Bankruptcy Rule 9023 and Federal Civil Rule 59(e)), "no such motion, however, exists with respect to the Parties' stipulation regarding the Plaintiff's 1999 tax refund." In other words, no one had moved to alter or amend the items that together disposed of all claims on the merits -- the stipulation and the earlier decision granting summary judgment.

The bankruptcy court nevertheless held that the motion was a valid Rule 9023 motion with respect to the issue of costs (which can be addressed separately and not deprive a merits judgment of finality), denied it stating that the matter was one of discretion, and explained that "given the procedural posturing of the Parties throughout the course of this proceeding, an award of costs in Defendant's favor would not be equitable." The Government then appealed the denial of costs.

### JURISDICTION

The bankruptcy court had jurisdiction over the Chapter 13 case, pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a), and also had jurisdiction over the complaint to recover damages, pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1).

Generally, this Court has jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158. However, whether this Court has jurisdiction over Andrea's appeal is a close question. If the stipulation between Andrea and the Government was self-effectuating (*i.e.*, did not require a further court entry to take effect and dismiss Andrea's remaining claims), then Andrea filed her notice of appeal late, thereby denying this Court of jurisdiction over her appeal.

A stipulation of dismissal is effective to dismiss claims without a court order when it has been "signed by all parties who have appeared." Federal Civil Rule 41(a)(1)(A)(ii); *see also* Bankruptcy Rule 7041 (applying Federal Civil Rule 41 to adversary proceedings in bankruptcy). The Sixth Circuit has recently interpreted this signature requirement "to include all entities who have appeared

7

in the action as parties," whether or not the entity or person in question is still a party to the action. *Anderson-Tully Co. v. Fed. Ins. Co.*, 347 F. App'x 171, 176 (6th Cir. 2009). Here, Kenneth did not sign the stipulation. Kenneth clearly appeared as a party, as one of the named plaintiffs in the adversary proceeding, and remained so at the time of the stipulation. Because Kenneth did not sign the stipulation, further court action was required to dismiss Andrea's claims or to otherwise implement the stipulation.[4] *See* Federal Civil Rule 41(a)(2) (except by proper notice before an answer or motion for summary judgment, or by proper stipulation of dismissal, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").

Having concluded the stipulation was not self-effectuating, the next issue is to determine what constituted the final appealable order in this case. The only possible options are the Order dismissing Kenneth for failure to prosecute (Bankr. Doc. No. 211), the February 2 Order declaring "there are no forthcoming matters necessary for adjudication in this court" (Bankr. Doc. No. 213), or the February 13 Order (Bankr. Doc. No. 220) in response to the Government's "Motion for Final Judgment" (Bankr. Doc. No. 218).

The Order dismissing Kenneth only addresses Kenneth and his claims, without mentioning Andrea. There is nothing to suggest that this Order implemented the stipulation of dismissal with regard to Andrea, or otherwise dealt with her claims at all. The February 2 Order is more promising: after describing the procedural history of the case, including the stipulation of dismissal between Andrea and the Government, the bankruptcy court concluded that "[b]ased on this procedural posture,

---

[4] Further evidence that the stipulation was not self-effectuating is the language used in the stipulation itself. For example, the parties agreed that the 2000-year tax refund claims "**may** be dismissed without prejudice," and that with regard to the 1999-year tax refund claims "the Court **may** enter a final appealable judgment against the debtors" (Bankr. Doc. No. 205, p. 2) (emphasis added). *See Anderson-Tully Co.*, 357 F. App'x at 175 n. 5.

8

it appears that there are no forthcoming matters necessary for adjudication in this Court. IT IS SO ORDERED" (Bankr. Doc. No. 213, p. 3). The only way for there to be nothing else for the bankruptcy court to adjudicate would be if Andrea's remaining claims were dismissed. And having concluded that nothing prior to this Order dismissed her claims, this Order must have implicitly adopted the stipulation's recommendation of dismissal.[5]

Having concluded the February 2 Order was the final appealable order addressing the merits of this case, Andrea's February 10 notice of appeal was timely and this Court has jurisdiction over her appeal. The Government also timely filed its notice of appeal, filing it within ten days of the bankruptcy court's Order denying costs.

## STANDARD OF REVIEW

A district court reviewing a bankruptcy court's decision on matters of law must apply a *de novo* standard of review. *Lutz v. Chitwood*, 337 B.R. 160, 168 (S.D. Ohio 2005) (citing *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988)). The sufficiency of a complaint is a matter of law. *Id.* (citing *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995)). Summary judgment is also a matter of law. *See* Federal Civil Rule 56(c)(2) (summary judgment "should be rendered if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law").

---

[5] Judge Speer certainly thought this was what he did, as evidenced by his final Order, which noted that no motion to alter or amend judgment had been filed with regard to the dismissal of the 1999-year and 2000-year refund claims, and therefore refused to address any of the Government's arguments on these claims. Such a rationale would only make sense if there were already an order dismissing Andrea's 2000-year claim, and the only possibility for such an order would be the February 2 Order.

9

**ANALYSIS**

Andrea appeals three decisions of the bankruptcy court: (1) dismissing the claim that the freeze violated the terms of the confirmed Chapter 13 plan for failure to state a claim upon which relief may be granted, (2) granting the Government summary judgment on the claim that the freeze of the 1999-year refund, and the Government's actions relating to that refund, violated the automatic stay, and (3) dismissing for lack of jurisdiction the claim that the freeze violated due process. The Government cross appeals the bankruptcy court's denial of costs, contrary to the stipulation between Andrea and the Government.

*Andrea's Appeal*

*Violation of the Plan*

Andrea first argues for a reversal of the dismissal of her claim alleging the freeze and the Government's initial refusal to issue a refund violated the terms of the confirmed plan. The bankruptcy court dismissed this claim because the complaint "does not identify any provisions of the plan or confirmation order that the IRS allegedly violated." *In re Harchar*, 2006 WL 3196846, *14 (Bankr. N.D. Ohio 2006).

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the court is to test the legal sufficiency of the complaint. In scrutinizing a complaint, the court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S.

10

544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n. 4 (internal quotation omitted).

The bankruptcy court dismissed the plan violation claim because "[a]lthough the complaint broadly asserts that the IRS violated the debtors' confirmed plan, it does not identify any provisions of the plan or confirmation order that the IRS allegedly violated. As a result, the complaint fails to state a claim that the IRS violated the confirmed plan." *In re Harchar*, 2006 WL 3196846, *14 (Bankr. N.D. Ohio 2006). On appeal, Andrea appears to argue, without much explanation, that the Government violated the plan's general provision that the Harchars would pay pre-petition unsecured creditors, including the IRS, through regular payments from plan income.

The confirmed reorganization plan here provided that the pre-petition tax claim would receive trustee distributions, projected to total five cents on the dollar, from disposable future income. The schedule of income and expenses at the time of the plan did not address tax refunds in the calculation of disposable income. It is not uncommon for Chapter 13 plans to include tax refunds in plan-funding, *see, e.g.*, *In re Laroche*, 409 B.R. 862, 864 (Bankr. E.D. Mich. 2009), but this one did not.

Tax refunds can be disposable income. *See In re Freeman*, 86 F.3d 478, 481-82 (6th Cir. 1996). Informed of a tax overpayment that could greatly multiply the percentage dividend for all unsecured general creditors, the Government had a right to seek a plan modification, as explicitly

11

contemplated by 11 U.S.C. § 1329. As Judge Speer observed, "it does not seem out of the ordinary that the IRS would want to seek to modify the Debtors' plan . . . [where] the 'plan provided for only a 5% dividend on the IRS's unsecured claim of $6,335 and the $4,303 overpayment, if treated as disposable income and turned over to the trustee, was large enough to increase that percentage substantially.'" *In re Harchar*, 293 B.R. at 180 (quoting the Government's summary judgment brief). And nothing in the plan prevented the Government from preserving the *status quo* while it prepared such a motion; that is, it was not required to moot its own motion by shoveling the money out the door before the motion could be prepared and heard by the bankruptcy court. *Cf. Citizens Bank v. Strumpf*, 516 U.S. 16 (1995) (Section 362(a)'s stay of collection, setoff, or control of estate property does not mean a bank is required to moot its own motion for permission to effectuate a setoff by unfreezing deposit account and thereby allowing debtor to withdraw and spend the funds while the motion is being prepared or pending). The bankruptcy court correctly held that the Adversary Complaint failed to state a claim of a plan violation, because Andrea failed to identify a specific provision of the plan which the Government violated by freezing the Harchars' refund.

*Violation of the Stay*

Andrea next argues for a reversal of the bankruptcy court's summary judgment decision on whether the freeze violated the automatic stay under 11 U.S.C. §§ 362(a)(3) and 362(a)(6). Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," while Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]."

12

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Bankruptcy Judge Speer issued a very thorough opinion addressing whether the stay was violated, holding that neither the institution of the freeze nor the actions of the IRS in connection with the freeze constituted a violation of 11 U.S.C. § 362(a)(3) or 362(a)(6). *In re Harchar*, 393 B.R. 160 (Bankr. N.D. Ohio 2008). After reviewing that opinion and its legal conclusions *de novo* in light of the current arguments on appeal, this Court adopts that opinion in its entirety, and affirms the bankruptcy court's decision to grant the Government summary judgment on the stay violation claim.

*Procedural Due Process & Sovereign Immunity*

Andrea's final argument on appeal is for reversal of the bankruptcy court's dismissal of Harchars' claim that the IRS violated their due process rights, based on the defense of sovereign immunity.

The decision first observes that Section 106(a) of the Bankruptcy Code waives sovereign immunity only as to claims arising under the Bankruptcy Code, and not for due process claims. *In re Harchar*, 2006 WL 3196846, *3-4 (Bankr. N.D. Ohio 2006). It then holds that Section 106(b) did not apply to the due process claim for damages because the computer freeze of post-petition-year

13

refunds and delay of the manual refund for year 1999 did not arise from the same transaction as the pre-petition tax debt. *Id.* at *4-5. The court further observed that declaratory relief was precluded by 28 U.S.C. § 2201 (precludes declaratory relief with respect to federal taxes except in prescribed circumstances, none of which apply here). And the Court also observed that injunctive relief was barred by 26 U.S.C. § 7421 (Anti-Injunction Act) and the fact the plan had been completed, and thus the Harchars would not be able to show irreparable harm. *Id.* at *6-7. These conclusions are correct, and the due process claim is barred by sovereign immunity.

Furthermore, Andrea would not be able to succeed on the merits of her due process claim. While a right to a tax refund may be property for bankruptcy purposes, *U.S. v. Harchar*, 371 B.R. 254, 268 (N.D. Ohio 2007), that does not necessarily mean it is property for due process purposes. In fact, a pending tax refund more closely resembles a claim for funds held by the Government. While the claim itself is a property interest for due process, the actual funds held by the Government are not. *See Lujan v. G & C Fire Sprinklers*, 532 U.S. 189, 195-97 (2001) (holding that where a contractor had a contract claim entitling him to payment from the Government, the property interest is the claim, not the funds, and there is no violation of due process so long as the contractor had an eventual remedy in the form of a suit to enforce its contract rights). A tax refund is analogous: the overpayment of tax gives a taxpayer a right to *claim* a refund, 26 U.S.C. § 6511, and if necessary to sue for a refund, 26 U.S.C. §§ 6532, 7422. Accordingly, the ability to sue to recover the overpayment is all the process that is due. Additionally, as Judge Speer observed, "[t]he Court is unaware of any authority which would provide the Debtors, or any other taxpayers, the right to have their refund quickly issued." *In re Harchar*, 393 B.R. at 182. Therefore, even were there not sovereign immunity, the due process claim would fail on its merits.

14

### *United States' Appeal*

The Government argues the bankruptcy court erred by refusing to issue an order implementing the stipulation of the parties that Andrea is liable to the Government for certain litigation costs.

The procedural history at the close of the adversary proceeding is not a model of clarity. Andrea and the Government entered into a stipulation which stated: "[t]he Court may enter a final appealable judgment against the debtors and in favor of the United States of America, including a judgment for the recovery of the United States' costs from the debtors (jointly and severally) in the amount of $5,623.00." As discussed in the jurisdiction analysis above, this stipulation was not self-effectuating, and was implemented by the bankruptcy court with the later Order of February 2. After the February 2 Order, and in response to a motion by the Government seeking an explicit order for costs pursuant to the stipulation, the bankruptcy court refused to grant costs, explaining that its power to assess costs is discretionary "and given the procedural posturing of the Parties throughout the course of this proceeding, an award of costs in the Defendant's favor would not be equitable." (Bankr. Doc. No. 220, p. 4).

The stipulation left costs to the discretion of the bankruptcy court. The stipulation stated that the court *may* include costs for the Government. The stipulation was not self-effectuating, instead requiring further court action to implement any or all of its terms (see jurisdiction discussion above). *See* Federal Civil Rule 41(a)(2) (because the stipulation was not self-effectuating, Andrea's claims "may be dismissed . . . only by court order, **on terms that the court considers proper**.") (emphasis added); *see also* Bankruptcy Rule 7054(b) ("The court *may* allow costs to the prevailing party when a statute of the United States or these rules otherwise provides.") (emphasis added). The

15

determination of costs was therefore left to the sound discretion of the bankruptcy court; the issue then is whether that discretion was abused.

Abuse of discretion is defined as "a definite and firm conviction that the . . . court [below] committed a clear error of judgment." *Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991). Here, the bankruptcy court cited the "procedural posturing of the parties" as why it would not be equitable to award costs. Although the bankruptcy court did not detail this procedural posturing, the record speaks for itself in that regard. The Chapter 13 case was filed in 1998, and the plan has since been completed. This adversary proceeding has been in the courts for over ten years. There have been two interlocutory appeals, both of which were brought by the Government, and the bankruptcy docket for the adversary proceeding alone contains 233 entries. The parties have not provided any argument which cause this Court to form a "definite and firm conviction" that the bankruptcy court "committed a clear error of judgment" by deeming costs inequitable to grant.

## CONCLUSION

For the foregoing reasons, this Court affirms the bankruptcy court's decisions to dismiss the plan violation and due process claims, and the decision to grant the Government summary judgment and deny summary judgment to the Harchars. This Court also affirms the decision to deny costs to the Government.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 18, 2010